Good morning, counsel. Hope you're all well, and that your families are safe during this time of crisis. So we're going to begin our argument. Let's have appellant, please. Good morning, Your Honor. This is Andrew Fletcher from Blank Room, on behalf of the appellant, Orion Drilling. Good morning, sir. How much time would you like to reserve? Five minutes, please, Your Honor. Very well. Go ahead, sir. Okay. This case is a case grounded in contract. The party's relationship that was formed was formed in contract. The contract set forth a straightforward commercial relationship. EQT wanted custom-built drilling rigs. It contracted to have Orion build those rigs. And as part of that contract process, the parties entered day work drilling contracts for the performance of work once the rigs were delivered and accepted by EQT. Given the language, the party's intent, and the rules of contract construction, how can 6.5 and 7.3 have the same purpose and aim? They do not have the same purpose and aim, Your Honor. Section Exhibit A to the contract set forth the special provisions of the contract that were specifically negotiated. That provide for termination at any time? At any time without cause, really? Correct? The special provisions in Exhibit A, Section 7.3, provides that the contract may be terminated early and at any time. And in the event of early termination, EQT is obligated to pay the early fee unless one of the three provisions in Section 7.3, A, B, or C, applies. Right. But the difference is that the early termination is a walk-away provision. If EQT just says, we're out of here, whereas 6.5 has default. It's in the event of default. Under your reading, it seems to me that, and I'm now looking at 6.5, if the contractor, if Orion failed to make prompt payment to subcontractors or violated a law, it's your position that then if EQT declared the default, they would have to pay liquidated damages under 7.3. Is that not your reading? Not precisely, Your Honor. So the provision the court just referenced, for example, failure to pay a subcontractor, there's a notice and opportunity to cure a provision. And then in the event that provision of 6.51 applies, then the remedies in 6.52 attain. I'm sorry, but what happens with liquidated damages? Isn't it your position that if that Our position, Your Honor, is that to avoid liquidated damages, they have to invoke the provisions of Section 7.3 and A, B, or C, provide the notice and the opportunity to cure. But it doesn't fit under A, B, and C. Which does not fit, Your Honor? The idea that it doesn't pay your subcontractors. Well, the failure to pay a subcontractor does not give rise to the right to immediately terminate the contract under 7.6.5, sub 2. But you're not saying that you weren't given an opportunity to cure. Well, with respect to the underlying facts, Your Honor, that is true. With respect to the RIG-18 contract, Amendment 4 to that provided a very specific mechanism by which the parties were going to review the issues raised by the independent inspector. So that is important here because none of the provisions of Section 6.5 were, in fact, invoked. What EQTs stated was, although they stated Section 6.5 with respect to the events that led to the 4th Amendment, which set forth a mechanism for an independent review and a process thereafter for Orion to make any repairs identified by the independent review. And then that would be subject to review by EQT. And so our position here in terms of the relationship between 6.5 and 7.3 is the parties specifically negotiated a cure process and an independent contractor process. And EQT did not, after Orion tendered the RIG for review, EQT said, we're not going to bother reviewing it. We're not going to bother reviewing the work that you've done in response to the report of the independent contractor. They just terminated. But didn't the jury reject whether or not that was sufficient cure? The jury finding was that there was no cure. I don't think that's quite accurate, Your Honor, because as we note in our brief, the trial court overlaid a material breach instruction on top of the contractual provisions. So, in fact, with regard to RIG 17, the jury found in the answer to question 7, did EQT production company breach the RIG 17 drilling contract with the Orion drilling company by terminating the RIG 17 drilling contract early and failing to pay the early termination fee? And the jury answered that question, yes. But I'm asking you about the question 10. I'm sorry, Go ahead. We were asking the same question. How about question number 10? They found that Orion did not timely cure the material breach. Well, but that presupposes that the material breach instruction is correct, Your Honor. So the issue isn't one of material breach. The issue is, what's the process under the contract for notice and an opportunity to cure? Go ahead. The material breach instruction corresponded with Pennsylvania law, the LJL case. And so I don't know how we can say that the district court earned its legal instruction to the jury. Well, we submit, Your Honor, that it was not consistent with the LJL case for two reasons. First, the LJL case requires that there be a standalone provision providing for termination for other reasons. That does not apply here because the provision that the court is addressing is one that attains only after notice and opportunity to cure. Specifically, what I'm referring to is section 6.51 provides for notice and opportunity to cure. Section 6.52 then addresses remedies. And then there's an omnibus provision that all other remedies are provided. So that provision, that requirement of LJL is not satisfied. But more importantly, LJL relates to those situations in which the breach is so severe that it goes to the essence of the agreement. And that has been interpreted by the Pennsylvania courts and by this court as meaning that it is a breach of the type where there's intentional misconduct, fraud, theft, that sort of thing. Well, that's just because those cases involve those facts. I don't think that there was a pronouncement by any of those cases that that type of instruction is limited to a fraud circumstance. Well, with respect, Your Honor, I would disagree with that because the idea is, in LJL is, at what point do you dispense with the notice and cure provisions of the contract and say, those no longer attain, those no longer apply because of a material breach? So let's stick with that because here, therefore, there was actually this was, if there was error, it was harmless because the court allowed the jury to determine whether you were entitled to a cure period, found you were, and then found you didn't cure. So at the end of the day, isn't this harmless error, if there's error at all? No, Your Honor, it's not because specifically with respect to the jury verdict on Rig 17, those findings are in conflict because did EQT breach by terminating early and not paying the termination fee. That provision has a notice and opportunity to cure period. So that finding, you've only reached that finding and say they didn't give proper notice and an opportunity to cure and then they find, but there was a material breach and then the judge overlays notice and opportunity to cure on material breach. The whole point of the material breach law is that you avoid the notice and opportunity to cure. But wasn't it within the court's discretion and the court instructed the jury, if it goes to the heart of the matter, wasn't it within the jury's province to say, yo, there were so many drop blocks here and whatever Orion did to try to cure and comply with these requirements, it was too little too late. They just didn't do it. Isn't that within the province of the jury to say, aha, this falls within something that goes to the heart of the contract? No, it's not your honor. And I'll tell you why, because with respect to the rig 18 contract, the parties negotiated amendment four in the context of everything your honor just said. So all of the facts that proceeded with respect to the performance under the contract and drop blocks and so forth, they negotiated amendment number four that controlled putting rig 18 back to work. The terms of amendment four specifically contemplate the rig could go back to work and this might happen again, because there's a provision shifting the indemnity provisions with respect to yet another drop block. So the proposition that the contract could be EQT could say, as your honor said, yo, enough is enough. It's three, it might be four, we've had enough. They specifically negotiated agreement that forecloses that argument. And so by saying to the jury, even though that's not how they behaved at the time, because they never said at the time, we have determined that this is a material breach that goes to the heart of the contract and therefore we're not giving you any more chances. What they said as to rig 18 was, we've had a review from the independent consultant and we're not going to comply with the provisions of that negotiated agreement. Was amendment number four a specific focus of your brief? It is set forth, yes, your honor, in our briefing. And with respect to amendment four, what EQT actually did in the context of the rig 17 was it then said as to rig 17, it has the same operating system. So we're terminating that one as well. They let 50 days go. They didn't give us any opportunity. We went through a process of tendering the rig for inspection and they refused to inspect it. So the point being, the context of the party's behavior, and we do discuss, your honor, the context of the party's behavior and the court ask is amendment four, part of our focus of our brief and our discussion, both in the opening brief and the reply brief, we talk about how EQT conducted itself. You didn't make that argument in the district court though. Which argument, your honor? That the conduct should be taken into account in terms of the interpretation of the contract. Oh, we did, your honor. Yes, we certainly did in our post-trial briefing. And your post-trial briefing. And throughout the case, your honor. So in the underlying case during the trial, Orion's position was always that this was a breach of the contract as specifically amended. So the rig 18 contract was amended multiple times and amendment four was the operative amendment as of the time and date of the termination. So what I was just summarizing, your honor, was absolutely the heart of the argument that was presented at trial. Was that your complaint though? Was your complaint that they breached amendment four? I'm going back to the original civil pleading, the complaint. Was that the breach of contract allegation? Yes, the breach of contract allegation was the contract as amendment, which was amended through amendment four. Yes. So it was not that they breached early. Do you allege in your complaint that they breached? They breached amendment four. They breached by early termination without a payment. What was the, what was your breach of contract in the complaint? The breach of contract is based on early termination, which is a without payment, which is a breach of the amendment four. So the rig 18 contract as amended through and amendment four had a provision for returning the, as I just mentioned, returning the rig to work. I understand. So when they, when they failed to comply with that, they're still entitled under the contract to terminate early. They just have to pay the early termination fee. So our allegation to answer your honor's question and our claim is terminating early without payment of the early termination fee is a breach of the contract as amendment. The particular terms of amendment four required a process for reviewing the rig, inspecting the rig with an independent consultant, reviewing that process and putting the rig back to work. So our position was you breach that by terminating and not paying. I understand your position. Thank you. Counsel. Nothing further. All right. Thank you. Council. We'll hear from appellee, please. May I please the court. My name is Nicole Bagnell and I represent EQT. Can you start with discussing this amendment for, because I'm, I'm not confident that it is as clearly identified as appellants. I would agree your honor. I don't think it was raised, but I do think it is relevant to the topic of material breach. And it actually is evidence that there was no harm, even if that instruction, which is not an error because it clearly tracks the law, but even if it were that there was no harm from that instruction. And I would direct the court to the actual amendment for, which is in the joint appendix at three 95 and three 96. And the language of that, it includes some really important language to this issue in paragraph two, it says Orion will any and all identified repairs or preventative measures to the satisfaction of EQT and ADC prior to the expiration of the extended cure period specified in paragraph one. So what this fourth amendment did was say we're agreeing post the drop block to a cure period. During that cure period, Orion has to cure to EQT satisfaction. So regardless of the material breach instruction, your honors, what the jury found was that EQT was not satisfied. And, and thus, it properly terminated the contract under amendment for, and the cure period had run. Yes. And no one disputes the cure period in amendment four had run. Likewise for rig 17, whether you apply section 6.5 or 7.3, the cure period had run because there was 59 days between notice and termination. And in fact, at trial, CEO of Orion admitted he didn't know if they cured 17. So there's ample record evidence that shows that supports the jury's verdict, regardless of material breach. The purpose of LJL is in the, is in the case where you have to have notice and cure and you didn't provide it in both cases, as Mr. Fletcher admitted under four, they had a revised the notice and cure period in that period ran. And in 17, it was 59 days. So there's never any argument that no matter which cure period you're applying, it ran. And so to the extent there's error, and again, LJL is clear and the argument that, um, that it requires fraud just doesn't hold any weight if you look at the cases, but either way, this would be a harmless error. How about the spoliation instruction? Um, Judge Kelly informed the jury that it could be determinative, that they could take it into account as much as they wanted, and they could use that as determinative. Isn't that problematic? It isn't, Your Honor, for a number of reasons. First, I think it's important to look at what standard we're applying here. And Judge Kelly's determination of spoliation is reviewed for an abusive discretion, or in other words, Orion must show no reasonable person could adopt Judge Kelly's view, which they can't under the facts. But you need to look at the entire instruction, which was very permissive and certainly rebuttable. It says that the jury may infer, and whether this finding is important to you, the jury, in reaching a verdict in this case, is for the 10 of you to decide. You may choose to find it determinative, somewhat determinative, or not at all determinative in reaching your verdict. Given that very broad, um, opportunity for the jury to make the decision, and the fact that Orion was permitted to rebut with evidence, both, and which they did, both the deposition testimony of But that wasn't before the jury. That rebuttal was in pre-trial proceedings. They weren't allowed, they weren't permitted at trial to rebut and offer evidence. They were, Your Honor. They did provide that testimony, and it is in the record. It was permitted and read into the record at the trial. Maybe you could give me an appendix reference for that. Yes, Your Honor, it'll take me just a minute. Yeah, don't, no, don't do it now. And Orion doesn't dispute that in their response brief. They don't note it in their opening brief, but they don't, do not dispute it in their response brief either. I'd like to ask counsel, um, about Rule 37, um, and I just want to make sure I understand that my understanding of why that's not referenced is, um, consistent with your understanding. Rule 37, obviously, is the sanctions rule. Yes. Rule 37E talks about adverse inference instructions, but it's talking about it in the context of electronically stored information, and I just want to confirm that no party and the district court did not rely on 37E because we're talking about physical evidence here, in this case, paper copies, and that's why that's what handwritten notes that he admits he threw away the day before this case was filed, and for Mr. Brandt, there were two categories of documents. One were notes, but the other, more important in this case, were his, uh, highlighted copies, hard copies of the contracts, which he likewise, um, testified he was never asked to produce in hard copy. And so it's your position that given their jobs at the company, they knew about the dispute, they got litigation holds, and in each instance did not retain documents relevant to the dispute that, in your view, is sufficient to demonstrate spoliation, meaning of failure, of suppression of evidence. Yes. Mr. Garza was in charge of the two-rigs-it issue in Pennsylvania. He testified that he was aware of the issues and that he threw away these notes literally the day before the complaint was filed, and Mr. Brandt was also in charge of, um, making sure that the contracts were-he was involved in the negotiation and in charge of the compliance with the contract, so certainly these were relevant individuals and this was relevant information. Isn't there at least an ambiguity between 6.5 and 7.3? I mean, when I first picked up this case and started looking at these provisions, I couldn't make any sense of them. It took me quite a while to even figure out a way to read them together. Why shouldn't a jury be determining, uh, the intent rather than the judge saying, oh, this is-this is what this means? Well, whether or not there's an ambiguity on the face of the contract is a question of law for the judge, but I think there is not an ambiguity. The judge correctly found that, Your Honor, because they really address different things. As you noted earlier, um, 7.3 replaced 6.3 in the-and was a discussion of early termination. The purpose of that section is in the case where EQT wants to terminate for any reason, and the purpose of 6.5, based both on its title and its content, is in the event of a serious default, and so these really address two separate conditions. Now, it's true that there are some exclusions for having to pay based on a voluntary, uh, termination in 7.3, but that doesn't change the fact that these were contemplated to address different scenarios, and that's exactly what they do. Let me ask you this. Orion seems to claim that, based on your papers, you did not raise material breach as an affirmative defense. Um, tell us, um, why, uh, anyone reading this would- would, uh, conclude that you had raised, um, your breach. Your Honor, uh, material breach was our counterclaim. We said there was a material breach, although it is the case that we subsequently dismissed that counterclaim, but it was also raised throughout the trial, and Mr. Fletcher's only objection to that was not the fact that it was raised, but the timing of the argument, as Judge Kelly correctly noted, but one thing I think is particularly telling on that, on this issue of whether Orion was on notice, was if you look at their answer to new matter, which state that- I need just one second to find it, Your Honor. They say that, um, Orion didn't breach the contract in their answer to our new matter, so clearly they were on sufficient notice of the fact that this was one of the issues in the case. And I'd like to ask you about, there was a judgment at the- motion for judgment as a matter of law to close of- of your case, um, and was there any- I'm sorry, Orion's case, was there any argument then that material breach wasn't in the case? Uh, no, it was raised in that argument, and that's, in fact, when Mr. Fletcher raised his objection that the timing was wrong for the argument, not that the argument was incorrect. And am I correct that in your motion, when you sought to dismiss the counterclaim, your representations to the court were that it was a mirror image of what was already in the case? Yes, Your Honor, and that was correct. Judge Rendell? Um, no, I have nothing further. And Judge Schwartz? Just one other question on spoliation. Yes. Um, Judge Rendell alluded to some language in the spoliation instruction. Um, is there a way that we could conclude that the- giving the instruction was harmless? And if so, what's- what ground would we rely upon? Yes, absolutely. I mean, I think that it's harmless because it- first of all, it's a correct statement of the- the options that the jury had, that the judge's findings on spoliation were correct, and the judge narrowly tailored her instruction to make- based on her specific findings and the record before it, so that the jury could make its determination of how to use that finding. And so, she really met all of the requirements. And it's important to read not just a snippet of the jury instruction, the entire instruction that I already have read for this court. But my- my question was whether or not- assume it was error, was it- how can we- could we conclude it was harmless? Or did it so infect the jury determination that we couldn't? No, you could absolutely can, um, conclude that it was harmless even if it- if the instruction- if the entire instruction- I'm sorry, I misunderstood the question. If the entire instruction was in error, it was- could certainly be concluded it was harmless because, um, Orion was permitted to put on evidence and the- the actual determination of spoliation, um, itself was, um, is reviewed on- was correct. And it's reviewed on an abusive discretion standard. And Orion can't meet, um, that standard to say that the determination itself was improper. And there's no- there's no question that it was a permissive instruction rather than a mandatory? Correct. There's no question, Your Honor. The judge says may three different times. Thank you. Uh, anything further, Judge? No, sir. Judge Hortz, no? All right, uh, thank you so much. And, uh, we'll, uh, hear from Mr. Fletcher on rebuttal. I will review in my rebuttal, um, the points in the sequence they recovered in Ms. Bagnell's, uh, argument. Mr. Fletcher, can I ask, first of all, that she says there's no question but that you were given a cure period and the cure period had expired. Do you dispute that? Yes. How so? The, the notion of a cure period expiring is expiring without cure. In both, in both cases of both contracts, before the cure period ended, Orion tendered the rigs for inspection. And how about the language to EQT satisfaction? Well, that is language in the contract. That's correct. But it's not simply to EQT's satisfaction. It's to the satisfaction of EQT and ADC, which is the name of the company that was the independent inspector. Orion, prior to the end, so, so that provision is in Amendment 4, Orion tendered the rig after doing the repairs identified by Aberdeen Drilling Consultants, which is the, what ADC stands for, and EQT refused to inspect the rig. So the, the concept of satisfaction, it refused, the record establishes EQT did not inspect the rig, refused, EQT refused to have Aberdeen Drilling Consultants return to inspect the rig itself. So our position is that we tendered within the cure period a cure, and they refused to evaluate the cure either themselves or through their consultants. So too with the rig 17 contract, when she says the cure period ran, what she means is they terminated the contract after the end of the time period, not that there was no cure. So if we don't, if we don't agree that liquidated damages would be warranted in this situation, what relief are you asking for? Well, the relief we would ask for, Your Honor, is, that we're seeking is to reverse and remand the case for a new trial or alternatively for judgment entered in favor of, of Orion. But to, to Your Honor's question as to if, if for some reason liquidated damages, I'm not exactly sure how liquidated damages wouldn't apply if it's a wrongful termination. But back to the, back to the issue that Your Honor was asking about earlier about the relationship of the two provisions, we agree at most to the court's comment with Ms. Bagnell, at most there's an ambiguity that needs to be resolved by a jury based on the party's intent. What we submit is the broad language of in 7.3 relating to performance according to industry standards and so forth and so on, which gives a 50 day cure period. That provision, if they satisfy that, EQT satisfies that, they may terminate early without paying liquidated damages. The provisions in section 6.5 give rise to remedies for EQT, essentially cost of cover and damages EQT incurs. If they continue for an additional 43 days, then they can say, this also permits us to terminate with no further payment. And, and the rationale for that is grounded in, to the question of liquidated damages, is grounded in the fact that the business deal here was Orion built two rigs that cost $18.5 million a piece to build in exchange for an agreement of a long-term contract, day work drilling contract, where they would make money over the course of the agreement. And there were very strict provisions to prohibit termination of that contract so that they couldn't be in a situation where, for example, you didn't pay a subcontractor for the casing and you're late on that payment. We're just going to wipe our hands of you guys and move on. And that is one of the reasons that the significance of the court's refusal to permit Orion to present the evidence of what was going on in the market to explain EQT's conduct. Because what happened was by the time these rigs were drilling and they were running into the ish problems that were leading to the amendments and so forth, the price for drilling rigs had without paying liquidated damages, which it did, it could go hire replacement rigs of equivalent capability for half the price, which is what it did. None of that could be present to the jury. With respect to the spoliation, first, the spoliation ruling itself was erroneous because the record evidence established with respect to the notes, the testimony of the witness was that he threw away scrap paper. There's affidavit testimony after EQT raised his motion, but nothing that he threw away had anything to do with the rigs in question. In addition, the record establishes that after that testimony, his actual handwritten notes were produced. They're in the record. And his affidavit says, these are my notes. Is this pre-trial or was this during the trial? This was pre-trial. So your honor, the district court made the finding of spoliation and the record I just described was before the district court. And she said, this is spoliation. So then did you have the opportunity to rebut it during trial or to present evidence to the jury during trial? No, we most certainly did not. So what I just, we were not allowed to present testimony from Mr. Brand that was consistent with his affidavit. We were not allowed to introduce the affidavit and argue what he threw away was scrap paper. All we were allowed to do was play the portion of his deposition testimony where the question and answer was, what did you throw away? I threw away some notes. What were they? They were scrap paper. Did you ask the judge for leave to introduce his live testimony? I'm sorry. Did you place him on your witness list as someone you wanted to offer live testimony from? Yes, he was on our witness list. Did you ask to offer live testimony or did you choose to proceed through deposition readings? We proceeded through deposition readings after the court specifically told us that she was not going to permit us to bring in any evidence beyond what was in the deposition. So we referenced that in our brief. What's the prejudice if you have deposition testimony before the jury that says it was scrap paper? You got to make the argument. I mean, is your point here we didn't get to have live testimony and that was prejudicial? No, your honor. My point is we were not allowed to make any argument as to the fact that this was not spoliation. She made that very clear. We were not allowed. If that's so, what would the purpose of allowing you to read into evidence that he only threw in scrap paper? If that comes in, that allows you to make the argument in summation. So if that's happened, I don't understand the prejudice. The prejudice is she instructed the jury after they testified, your honor, that they had willfully destroyed relevant evidence and there was no factual foundation in the record for that finding. She made that pretrial and she specifically advises that we were not permitted to argue that point to the jury. We briefed this in briefs to the court that we'd be allowed to argue this and she specifically said, you are not permitted to argue to the jury that this was not spoliation. So you did not. At closing, you didn't touch it with a 10-foot pole. That is correct, your honor. I was instructed not to. And with respect to the notion of prejudice on spoliation, when a judge advises a jury that a party has intentionally destroyed relevant evidence and you can decide what weight to give it, the interim effect of that is well understood and described in the case law. But Mr. Fletcher, there was so much evidence here of these drop locks and how horrible it was. I mean, even your witnesses, for heaven's sake, said, you know, they'd never seen this and, you know, maybe one and maybe they'd seen it, you know, once in five years and this could have killed somebody. And I mean, this horrible evidence where EQT, jury could easily say EQT just threw up their hands and said, you know, we just can't keep doing this. How does this little bit of a couple of records, how's that going to be something that's going to sway the jury entirely? Well, what I would say, your honor, is that it's part and parcel of precluding us from describing the entire commercial relationship. So your honor just described what happened with rig 18. And as I pointed out, there was a specific amendment that the parties negotiated to address that. And one might ask, as your honor's question implies, well, why would they do that? Why would they do that if they were allowed to terminate after seven days? Why would they do that if they're allowed to terminate for material breach? The reason they did it is because they knew that they had an obligation to pay liquidated damages if they terminated early because these were purpose-built for them. Now you waived that argument. You did not make that argument before the district court. Which argument? That the reason they did these amendments, that their course of conduct shows that they knew they had to pay liquidated damages. You did not make that argument in the district court. Well, not exactly the way your honor just described it, but the court described that the court determined pre-trial that the liquidated damages clause was enforceable. So the argument we made at trial was not whether or not there would be liquidated damages. We did make the argument, but she would not allow us to talk about the rationale or reason for the contract provisions. She specifically precluded that because she said, I have ruled that section 6.5 gives them this right. I have determined that they're entitled to make an argument under material breach. So the argument I'm making to your honor, I was specifically precluded from making to the jury because she foreclosed that by ruling as a matter of law that this is the straitjacket that we have to operate in. Uh, anything more, uh, Judge Schwartz? No, thank you. And Judge Rendell? No, thank you. All right. Well, counsel, thank you, uh, both for the arguments. Uh, we will take the matter under advisement and on behalf of the court, we wish you and your families well during this time of national crisis.